LOUIS POKROISKY *vs.* HARRY POTTER.

Cumberland.     Opinion April 4, 1930.

*Francis W. Sullivan*, for plaintiff.
*Maurice E. Rosen*, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, JJ. MORRILL, A. R. J.

STURGIS, J.   General motion for a new trial in an action against
the defendant to obtain a deficiency judgment for the balance due
on three notes secured by mortgages now foreclosed.

Omitting a recital of unimportant facts it appears that the
Trustees of The Summit Realty Trust, a Massachusetts real estate
trust, gave the plaintiff three promissory notes, one dated January
10, 1927, for $7,500, payable November 13, 1927, with an install-
ment provision, the second of the same date but in the amount of
$7,975, payable September 19, 1927, also in installments, and the
third dated April 25, 1927, for $7,675, payable in one year in in-
stallments.  Each note was signed by the three Trustees, of which
the defendant was one, and also, before delivery, signed on the
back by the Trustees, as individuals and for accommodation.  Each
note was secured by a real estate mortgage.

The management and operation of the Trust was intrusted to a
Mr. Rich, one of the Trustees.  Mr. Potter, the defendant, ac-
quiesced in the arrangement but participated little if at all in the
business affairs of the Trust.  The loan, for which the notes were
given, was negotiated by Mr. Rich, who also made the notes, sent
them to the defendant for signing, and finally delivered them to the
plaintiff.

When the notes came due, none were paid, but, having been re-
duced by partial payments, the plaintiff, at the request of Mr.
Rich and without the knowledge of the defendant, in consideration
of a bonus of four and one-half per cent additional interest on
balances due, extended the time for payment of the notes for a
period of one year.  A further extension was given the next year
on the same terms.

August 21, 1929, taxes and payments due on the notes being in
arrears, the plaintiff began foreclosure, and on September 29,
1929, bid the property in at the mortgage sale. The proceeds of this
sale, together with rents and profits collected, was applied upon

the notes, and the verdict below for $7,251.56 fairly represents the unpaid balance now due.

Without proof of the law of Massachusetts, where the notes in question were made and extended the common law as interpreted in this state governs the rights and liabilities of the parties. *Emerson* v. *Proctor*, 97 Me., 360; *Carpenter* v. *Railway Co.*, 72 Me., 390; *Mackenzie* v. *Wardwell*, 61 Me., 139. The Negotiable Instruments Act, either of Maine or of Massachusetts, has, here, no application.

At common law, the defendant is liable to the plaintiff upon this paper as an original promisor or maker. *Banking Co.* v. *Jones*, 95 Me., 335; *Bradford* v. *Prescott*, 85 Me., 482; *Rice* v. *Cook*, 71 Me., 559. It is satisfactorily proven, however, that the holder took the notes with knowledge that the defendant in fact was a surety or accommodation maker. It is equally clear that the holder extended the times of payment of the several notes without the defendant's knowledge. Upon these facts, the defendant is discharged from his personal liability, unless his assent to the extensions is established. *Lime Rock Bank* v. *Mallett*, 42 Me., 349; *Andrews* v. *Marrett*, 58 Me., 539; *Banking Co.* v. *Jones*, supra, p. 338; 13 Ann. Cas., 999. n.; 3 R. C. L., 1275, et seq; 8 C. J., 277 n.

The defendant was a stranger to the plaintiff until after the extensions were made. All negotiations for, payments on, and extensions of the notes were made by Mr. Rich, the defendant's co-trustee and accommodation comaker. His denials that the defendant had knowledge of or assented to the extensions is convincing and supports the defendant's assertion. The only time the defendant met the plaintiff was in April, 1929. At that time, the three Trustees arranged a waiver of a foreclosure then begun, and a reduction in monthly installments on the notes, but extensions already made were not considered or discussed.

Without knowledge, there can be neither assent nor waiver. *Jewell* v. *Jewell*, 84 Me., 304, 307. We are convinced that the jury were not warranted, upon the evidence before them, in finding either that the defendant knew of the extension granted by the holder of the notes in suit, or assented thereto with or without knowledge.

The defense of discharge having been well pleaded and supported by the evidence, the verdict below for the plaintiff was manifestly wrong.

*Motion granted.*
*New trial ordered.*